UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD VIGUS, individually and as the representative of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHERN ILLINOIS RIVERBOAT/CASINO CRUISES, INC. d/b/a Harrah's Metropolis Casino,<br><br>Defendant. | Case No. 08-cv-786-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff Richard Vigus's motion for class action certification under Federal Rule of Civil Procedure 23 (Doc. 70). Defendant Southern Illinois Riverboat/Casino Cruises, Inc. d/b/a Harrah's Metropolis Casino ("the Casino") has responded to the motion (Doc. 73), and Vigus has replied to that response (Doc. 88). In addition, Vigus has asked the Court for leave to amend his compliant (Doc. 74), and the Casino has responded to that motion (Doc. 78).

I.     **Background**

The Casino, or its agent Global Connect, regularly calls members of its Total Rewards customer loyalty program using a prerecorded voice message to alert the members to special commercial offers or to provide information about the Casino. When an applicant applies to participate in the Total Rewards program, a Casino representative asks the applicant for a telephone number the Casino can use to contact them with special offers or information, and if the applicant provides a number, the Casino adds it to its call list. The Casino has collected over 100,000 telephone numbers in its database, which it does not update unless requested by the Total Rewards program member. The Casino, or Global Connect, targets Total Rewards members based

on their history of Casino use and directs certain prerecorded telephone calls to the telephone number provided by those members. The Casino maintains that it calls only telephone numbers that have been provided by applicants to its Total Rewards customer loyalty program. Vigus was not a Total Rewards program member and had never given his number to the Casino.

This matter arose after Vigus received eight prerecorded telephone calls on his residential telephone line conveying an unsolicited advertisement from the Casino. At the time, Vigus had no established business relationship with the Casino and had not given his consent for it to call him. Apparently, the Casino called Vigus because the telephone company through which Vigus received residential telephone service had assigned him a telephone number that had, in the past, belonged to an individual who had given the number to the Casino when he or she had applied to the Total Rewards program. The Casino did not remove the number from its call list when it was reassigned. Vigus believes the Casino violated the Telephone Consumer Protection Act ("TCPA") when it called him.

Among other things, the TCPA prohibits initiating "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party" unless it is an emergency call or is exempted by regulations promulgated by the Federal Communications Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B); *see* 47 C.F.R. § 64.1200(a)(2). One of the exemptions created by the FCC is for telephone calls that are made to a person with whom the caller has an established business relationship ("EBR") at the time of the call. *See* 47 C.F.R. § 64.1200(a)(2)(iv). An EBR is further defined by the regulations by reference to transactions or inquiries between the called party and the caller within certain time frames. 47 C.F.R. § 64.1200(f)(4). Another exemption is for telephone calls that do not contain unsolicited advertisements or solicitations. *See* 47 C.F.R. § 64.1200(a)(2)(iii).

Vigus contends he never gave his express consent for the Casino to call him and did not have an EBR with the Casino when it called him. Vigus now seeks to represent a class defined as:

> All persons in the United States who were called, on or after March 1, 2004, on either (1) a residential telephone line or (2) a cellular telephone service, by or on behalf of Defendant using a prerecorded voice to deliver a message promoting Defendant's Casino

to pursue a private cause of action under the TCPA, 27 U.S.C. § 227(b)(3).[1] He believes this putative class contains a number of individuals who received telephone calls from the Casino at telephone numbers that had once been given to the Casino by Total Rewards program applicants but which were "stale" because they had since been reassigned to individuals like himself who had no relationship with the Casino. He also suggests *no* Total Rewards member gave consent to be the subject calls because the general consent to receiving telephone calls did not include consent to receiving *prerecorded* messages.

Vigus also asks the Court to allow him to amend his complaint, which alleges only an improper call to his residential telephone number, to include a claim for improper calls to cellular telephone numbers in violation of the TCPA, 27 U.S.C. § 227(b)(1)(A)(iii). That provision

---

[1] Vigus invokes the Court's federal question jurisdiction under 28 U.S.C. § 1331. In a number of other circuits, his reliance would be misplaced, for at least six circuits believe the TCPA does not create a federal cause of action that can serve as the basis for federal question jurisdiction or removal on that basis. *See Murphey v. Lanier*, 204 F.3d 911, 915 (9th Cir. 2000); *Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs., Ltd.*, 156 F.3d 432, 435 (2d Cir. 1998); *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 519 (3d Cir. 1998); *Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287, 1289 (11th Cir.), *amended by* 140 F.3d 898 (1998) (*per curiam*); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 514 (5th Cir. 1997); *International Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1156 (4th Cir. 1997). However, the Seventh Circuit Court of Appeals held otherwise in *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450-51 (7th Cir. 2005), and this Court is bound by that precedent. *See also Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 463-65 (6th Cir. 2010) (federal court has federal question jurisdiction over TCPA claim) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 27 U.S.C. § 227(b)(1)(A)(iii); *see* 47 C.F.R. § 64.1200(a)(1)(iii). Because the scope of the complaint is relevant to the issue of class certification, the Court addresses the amendment question first.

## II. Motion for Leave to Amend Complaint

Whether Vigus should be allowed to amend his complaint is governed by Federal Rule of Civil Procedure 15(a)(2). Rule 15(a)(2) provides that a plaintiff may amend his pleading only with the opposing party's written consent, which Vigus has not obtained, or leave of court, which the Court should freely give when justice requires. Although the text of the rule has changed in recent years, the rule still "reflects a policy that cases should generally be decided on the merits and not on the basis of technicalities." *McCarthy v. Painewebber, Inc.*, 127 F.R.D. 130, 132 (N.D. Ill. 1989). Generally, the decision whether to grant a party leave to amend the pleadings is a matter left to the discretion of the district court. *Orix Credit Alliance v. Taylor Mach. Works*, 125 F.3d 468, 480 (7th Cir. 1997). A court should allow amendment of a pleading except where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (citing *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007)). An amendment is futile if it would not survive a motion to dismiss for failure to state a claim, *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997), or a motion for summary judgment, *Bethany Pharmacal Co. v. QVC, Inc.*,

4

241 F.3d 854, 860 (7th Cir. 2001).

In considering Vigus' request for leave to amend his pleading, it is important to remember that prior to certification of a class, the Court views a case simply as a suit by the named plaintiff. *See Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002) ("[U]ntil certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs."). Thus, the relevant inquiry is not whether any member of the putative class might have a claim under the provisions of the TCPA relating to calls made to cell phone numbers but whether Vigus himself has such a claim. If he does not, he does not have standing to sue under the TCPA's cell phone provisions.

Vigus has not shown that he is able to plead a cell phone TCPA claim, and amendment is therefore futile. The amended pleading would not survive a motion to dismiss because the proposed amendment contains no factual allegations that the Casino made any call to Vigus' cell phone number. Thus, his proposed amended complaint does not allege a violation of § 227(b)(1)(A)(iii), and it would be futile to allow him to file his proposed amended pleading. For this reason, the Court will deny his motion for leave to amend his complaint (Doc. 74).

## III. Class Certification Analysis

A principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical manner. *See General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 155 (1982). The Court may certify a class if it satisfies all four provisions of Federal Rule of Civil Procedure 23(a), at least one provision of Rule 23(b) and the implied prerequisites that a class be ascertainable and that the class representatives be within the class. It is the moving party's burden to establish that each of the prerequisites of Rule 23 is satisfied. *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147,

161 (1982); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). A plaintiff's failure to satisfy any of the Rule 23 requirements precludes class certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (citing *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993)).

Generally, when ruling on a motion for class certification, the Court does not consider the merits of the case; rather, the Court focuses on whether the certification requirements are satisfied. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). "'[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *Id.* (quoting *Miller v. Mackey Int'l, Inc.*, 452 F.2d 424 (5th Cir. 1971)). Thus, the Court's role in the action currently under review is to "determine whether the plaintiff is asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23." *See* H. Newberg, 8 *Newberg on Class Actions*, § 24.13 (3d ed. 1992).

Nonetheless, the determination of a class certification motion may involve some consideration of the factual and legal issues that comprise the plaintiff's cause of action. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978). While the Court may not consider arguments directly on the merits, it may make a preliminary inquiry into the merits of the action when necessary to determine whether the requirements for class certification have been met. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001). For example, it may take into account the substantive elements of a plaintiff's claims and the proof necessary to those elements so as to envision the form trial on those issues would take. *Elliott v. ITT Corp.,* 150 F.R.D. 569, 573 (N.D. Ill. 1992) (citing *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981)).

The Court must rigorously assess whether the prerequisites have been met, *see Falcon*, 457 U.S. at 161, and, if the party seeking class certification meets each of them, the Court must certify

6

the proposed class, *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010) (noting "a categorical rule entitling a plaintiff whose suit meets the specified criteria [of Rule 23] to pursue his claim as a class action"); *Vickers v. Trainor*, 546 F.2d 739, 747 (7th Cir. 1976); *Fujishima v. Board of Educ.*, 460 F.2d 1355, 1360 (7th Cir. 1972). The Court has broad discretion to determine whether a proposed class satisfies the requirements, *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998); *Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir. 1980), and should err in favor of maintaining class actions, *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 26 (7th Cir. 1975).

The Casino argues that Vigus cannot establish that (1) the proposed class is sufficiently ascertainable as a class, (2) common issues predominate over individual issues and a class action is superior to other methods of resolving this dispute as required by Rule 23(b)(3), (3) Vigus' claim is typical of the claims of the putative class members as required by Rule 23(a)(3), or (4) Vigus is an adequate class representative as required by Rule 23(a)(4).

The Court begins with the ascertainability and typicality requirement because it is immediately struck with the potential overbreadth of the proposed class definition and Vigus' likely atypicality. Vigus wants to represent *every recipient* of a prerecorded message from the Casino during the relevant time period. This is not a case where the defendant purchased a list of residential telephone numbers from a vendor and proceeded to "cold call" each number, including Vigus', to deliver prerecorded messages. In such a case, there is a likelihood that a great majority of the telephone call recipients would, like Vigus, have causes of action under the TCPA because there would be little basis to believe they had given their express consent to be called on their residential telephone lines. This case, on the other hand, involves a call list generated by the defendant itself from a list of people who had voluntarily given their telephone numbers – some

7

residential, some cell and some business numbers – knowing that, as a consequence, they would receive telephone advertisements from the defendant. That this list was composed of willing call recipients is a very valid reason to believe the list contains a great number of people who believed their general consent to be called did not exclude prerecorded message, who have no gripe with the Casino's calls and who, unlike Vigus, have no arguable TCPA cause of action against it. This immediately causes the Court to question whether the class is ascertainable and whether Vigus' claim is typical of the claims of the putative class.

A.     Implied Prerequisites

Before the Court can address the issues raised by Rule 23, the moving party must satisfy two implied prerequisites of Rule 23. The first is that the class is sufficiently defined so as to be identifiable as a class. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) ("It is axiomatic that for a class action to be certified a 'class' must exist."). Where a class is overbroad and could include a substantial number of people who have no claim under the theory advanced by the named plaintiff, the class is not sufficiently definite. *See, e.g., Oshana*, 472 F.3d at 514. The second implied prerequisite is that the named representative fall within the class. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

Vigus' proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the Casino knowing the Casino would call those numbers to present special commercial offers.[2] They have no grievance with the Casino, and, as in *Oshana*, their inclusion in

---

[2]As noted above, Vigus argues that, while Total Rewards program applicants may have consented to be called, they did not expressly consent to be called *and given a prerecorded message*. However, Vigus has given the Court no reason to believe that the consent given by Total Rewards program applicants to receive telephone calls was limited to non-prerecorded

8

the proposed class definition renders it overbroad and the class unfit for certification. Thus, Vigus has not shown he can satisfy the first implied prerequisite to class certification.

Even if the Court were to modify the scope of the class to limit it only to those who were reassigned telephone numbers that had been voluntarily provided to the Casino in the past by Total Rewards program applicants, the process of determining who fell within such a class could not be determined by objective criteria applicable to the class as a whole. On the contrary, specific inquiry would be necessary to determine whether each telephone number had actually been reassigned to a new customer.

Vigus argues this could be accomplished by reviewing Global Connect's call logs to identify telephone numbers to which the Casino's calls had been unsuccessful at least three times within a 60-day period, which may indicate the line had been disconnected, left dormant for a period, and then reassigned to a new individual or business. Vigus' expert has made such a review and has found more than 1,400 such numbers. However, even after identifying such numbers, further number-specific inquiry would be necessary to identify reassigned numbers and their owners at the times of the Casino's calls. For example, the Casino has provided evidence that at least three telephone numbers identified using Vigus' culling process did *not* indicate reassigned numbers. In addition, it offers a number of reasons the identification process would not be conclusive: technical difficulties of the telephone company, placement of a "vacation hold" on a seasonal residence, telephone maintenance or temporary disconnection for non-payment of a telephone bill. Even for any reassigned numbers that could be identified, it would be necessary to identify the people assigned to those numbers at the times the allegedly offending calls were made,

---

calls. In the absence of evidence that the consent did not extend to prerecorded telephone messages, Vigus has not carried his burden of showing the class is not overbroad.

which may not be the people currently assigned to those numbers.

It is clear to the Court that determining who would be in a class narrowed to an appropriate size could not be done by reference to objective criteria applied class-wide and would be an unmanageable task.

B.      Rule 23(a)(3):  Typicality of Claims and Defenses

"A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [his] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)).  The Court should focus on whether the named representatives' claim has the same essential characteristics as the claims of the class at large. *Oshana*, 472 F.3d at 514;  *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).  "Properly applied, these guidelines should uphold the rationale behind the typicality requirement, namely that 'a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with . . . those of the representative.'" *Insolia v. Philip Morris Inc.*, 186 F.R.D. 535, 544 (W.D. Wis. 1998) (quoting 1 H. Newberg, *Newberg on Class Actions*, § 3.13 (3d ed. 1992)).  However, a class "should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009), *cert. denied sub nom Pacific Inv. Mgmt. Co. v. Hershey*, 130 S. Ct. 1504 (2010).

For the same reasons the Court finds the class not ascertainable, it also finds Vigus' claim is not typical of the putative class members' claims.  The proposed class includes a substantial number of people who voluntarily gave their residential telephone numbers to the Casino knowing

10

the Casino would call those numbers to present special commercial offers. Vigus' claims are not typical of their claims because they consented to being called on their residential lines when they applied for Total Rewards program membership, and he did not.

To the extent Vigus seeks to certify owners of cell phone numbers called by the Casino who might have a cause of action for violation of 47 U.S.C. § 227(b)(1)(A)(iii), the TCPA's provision relating to cell phones, his claim is not typical of those putative class members because they rely on different legal theories and different defenses. As noted above, Vigus does not have a cause of action under 47 U.S.C. § 227(b)(1)(A)(iii) for the Casino's call made to his residential line.

      C.      <u>Rule 23(b)(3): Common Issue Predominance and Superiority</u>

Rule 23(b)(3) requires that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action be superior to other ways of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). This category was designed "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23 advisory committee's note to 1996 amendment).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. The Rule 23(b)(3) predominance requirement overlaps considerably with Rule 23(a)(2)'s commonality requirement, although the predominance requirement is "far more demanding." *Id.* at 624. While individual issues of damages generally will not prevent certification, *See Arreola v. Godinez*, 546 F.3d 788, 800-01

11

(7th Cir. 2008), a plaintiff must offer a method of "generalized proof to establish liability with respect to the class" in order to satisfy Rule 23(b)(3), *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008) ("[P]laintiffs must advance a viable theory employing generalized proof to establish liability with respect to the class involved, and . . . district courts must only certify class actions filed under the TCPA when such a theory has been advanced.").

The predominant issues in this case will be individual questions rather than common questions. Vigus maintains that the Court would be faced with some common issues: whether the Casino's calls constituted advertisements, whether the calls violated the TCPA, and whether the Casino's conduct constituted willful or knowing violations of the TCPA such that treble damages would be appropriate. He further cites a number of cases suggesting that the common issue of whether a call or fax recipient consented to the communication was a common and predominant issue. *See, e.g., Hinman v. M&M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008); *Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. 2009). For example, in *Hinman*, the Court held that the question of consent was a common, predominant issue where the defendant transmitted faxes to numbers on a "leads" list it had purchased where few recipients on the list were likely to have consented to receive them. *Id.* at 807. The Court noted that "*[u]nder such circumstances*, the question of consent may rightly be understood as a common question." *Id.* (emphasis added). A similar factual situation existed in *Targin Sign*, 679 F. Supp. 2d at 896 ("Nor is there a whisper about those targets, or any of them, being people who, or institutions that, had consented to [the defendant's] faxing them."); *G.M. Sign*, 2009 WL 2581324 at * 5 ("[F]axes were sent to anonymous third party fax lists procured by [the defendant's agent] which [the defendant] did not review. In addition, [the agent] never sought nor received

permission to send the faxes from the recipients on the list."), all of which were certified a class actions.

Those cases, however, are distinguishable from the case at bar. In the case at bar, there is a far greater likelihood than in the cases cited above that the Casino's call list is not a list of homogeneously unconsenting recipients. On the contrary, determining who has consented or not consented to the Casino's calls will depend on individual examination of the identity of the assignee for each number on the list at the time of each call. In truth, a myriad of individual inquiries will be necessary to arrive at a decision on the issue of liability, which renders this case unmanageable as a class action: whether each *different* prerecorded message was an advertisement, whether each Total Rewards program applicant who gave the Casino a contact telephone number had an EBR with the Casino, whether the telephone numbers given were residential, cell or business numbers, which telephone numbers on the list were at some point during the relevant time period not associated with the Total Rewards program applicant who provided the number, at what times did those numbers become reassigned or associated with someone other than the Total Rewards program applicant, and who received the prerecorded calls besides Total Rewards program applicants who had given the phone number. That the Casino may carry the burden of proving some of these individual questions as part of an affirmative defense does not render those questions any less predominant in this litigation. Thus, the circumstances here are far different than those in the cases cited by Vigus, which are not persuasive to the Court.

With respect to the specific set of facts presented in this case, the fact that the Casino delivered its prerecorded messages *en masse* to many recipients does not somehow consolidate the necessary individual inquiries into a common, predominant inquiry. It was not the common course of conduct of making of the prerecorded telephone calls generally that constituted the allegedly

wrongful act, but the irregular conduct of directing those calls to *certain individuals* that might have been protected from those calls by the TCPA because they had been assigned numbers formerly assigned to Total Rewards program applicants. *See Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) ("The gravamen of plaintiff's complaint is not a common course of conduct by the defendant, but rather a series of individual [fax] transmissions under individual circumstances, each of which is an alleged violation of the [TCPA]. Lacking a single set of operative facts, it is difficult to see how common questions, if any, predominate."). Determining which specific calls were made to those protected individuals will be the predominant issue in this litigation, and Vigus has not presented an accurate way to answer the individual questions presented by this case on a class-wide basis. Even if Vigus' expert could narrow the field of potentially reassigned numbers, identifying which of those numbers were *actually* reassigned would still require further, individualized inquiry. Given the facts of this case, including the origin of the Casino's call list from its existing customers who gave their general consent to be called, determining which specific calls were made to individuals protected by the TCPA cannot be made by generalized proof at a class level. *See, e.g., Gene & Gene*, 541 F.3d at 327-29 (plaintiff "failed to advance a viable theory of generalized proof to identify those persons, if any, to whom [the defendant] may be liable under the TCPA.").[3]

Certifying this case as a class action would not achieve economies of time, effort or expense because of the numerous individual questions that would need to be answered to reach a

---

[3]Pursuing the theory that Total Rewards program applicants who consented to being called did not consent to being called *using prerecorded messages* would also create the need for individualized inquiry into the scope of each applicant's consent. This would render litigation under that theory unsuitable for class treatment because of the numerous individualized inquiries that would predominate.

fair and just result on the issue of liability. On the contrary, it would burden the Court and the litigants with the arduous task of sifting through each putative class member's claim to determine its merits on a case-by-case basis. This is unacceptable, especially where putative class members who were actually aggrieved by the Casino's acts have a quick, adequate and superior remedy in other more speedy venues such as, for example, a state small claims court. Additionally, in cases such as this, there is no need for uniform results because putative class members' differing situations are likely to warrant different results.

In light of the foregoing reasons for denying class certification, the Court need not address the other Rule 23 requirements.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Vigus' motion for leave to amend his complaint (Doc. 74); and **DENIES** Vigus' motion for class certification (Doc. 70).

**IT IS SO ORDERED.**
**DATED: March 11, 2011**

                                                   s/ J. Phil Gilbert
                                                   **J. PHIL GILBERT**
                                                   **DISTRICT JUDGE**